# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| DR. ANDREW ACKERMAN, | ) |
| Plaintiff, | ) COMPLAINT |
| v. | ) CASE NO. |
| JANE ELLEN ACKERMAN, | ) DAMAGES OVER $75,000 |
| Defendant. | ) |

## COMPLAINT

NOW COMES DR. ANDREW ACKERMAN ("Plaintiff" or "Dr. Ackerman"), by and through his attorneys, Mudd Law Offices, and complains of DEFENDANT JANE ELLEN ACKERMAN ("Defendant"), stating as follows:

### NATURE OF ACTION

1. This is an action for defamation *per se*, false light, intrusion upon seclusion, conversion, and intentional infliction of emotional distress arising from the Defendant's actions directed toward the Plaintiff.

2. By this action, Dr. Ackerman seeks compensatory damages, punitive damages, injunctive relief, and all other relief to which he may be entitled as a matter of law.

### PARTIES

3. Dr. Ackerman is a citizen of the State of Utah and a resident of Salt Lake County, Utah.

4. The Defendant is a citizen of the State of Colorado and a resident of Jefferson County, Colorado.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of Dr. Ackerman's claims pursuant to 28 U.S.C. § 1332 as (a) Dr. Ackerman and the Defendant are citizens of different states and (b) the amount in controversy exceeds $75,000.00.

6. This Court may exercise personal jurisdiction over the Defendant because she has sufficient contacts with Utah for this Court to exercise general personal jurisdiction over her. Additionally, the Defendant has directed conduct toward Dr. Ackerman in this jurisdiction sufficient for this Court to exercise specific personal jurisdiction over her.

7. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8. The Defendant engaged in intentional conduct directed toward Dr. Ackerman that has harmed him.

9. Dr. Ackerman has been injured by the Defendant's conduct and has suffered damages resulting therefrom in an amount greater than $75,000.00.

## FACTUAL BACKGROUND

*Background on Parties*

10. Dr. Ackerman and the Defendant ("Parties") are siblings.

11. The Parties' father, now deceased, was Albert Ackerman.

12. Upon information and belief Albert Ackerman suffered from dementia and took medication for symptoms related to Alzheimer's Disease.

13. Albert Ackerman's dementia caused Albert Ackerman to be mentally incapacitated.

14.     On or about October 24, 2017, the Defendant convinced the mentally incapacitated Albert Ackerman to sign the Declaration of Trust of Albert Ackerman M.D. Revocable Trust ("Trust"), which disinherited Dr. Ackerman

15.     The Defendant has admitted that she "set up the trust for [Albert Ackerman]."

16.     The Trust instrument also provides that, "Trust items not previously given to [the Defendant] during [Albert Ackerman]'s lifetime including all items contained in numerous boxes located at [Albert Ackerman]'s residence, shall be given to [the Defendant]."

17.     Moreover, the Trust provides that the "rest, residue and remainder of the trust assets shall be distributed to DONG WANG and JANE ACKERMAN, in equal shares free and clear of trust, or if she fails to survive [Albert Ackerman], to [the Defendant]."

18.     At no time prior to Albert Ackerman's death was Dr. Ackerman informed of the Trust's formation and execution.

19.     Prior to executing the Trust, Albert Ackerman had intended to leave certain items of his personal property to Dr. Ackerman after Albert Ackerman's death.

20.     Albert Ackerman and Dr. Ackerman owned an interest in real property.

21.     Albert Ackerman owned an IRA account which named Dr. Ackerman as beneficiary.

22.     Albert Ackerman possessed valuable personal property, including a piano, a car, cameras, stereo equipment, and certain artwork.

23.     Albert Ackerman intended to give the piano, car, and certain artwork to Dr. Ackerman as an inheritance.

24.     Albert Ackerman intended to leave Dr. Ackerman sources of income to pay for Dr. Ackerman's veterinary school.

25. Albert Ackerman intended to leave Dr. Ackerman sources of income for Dr. Ackerman to purchase or buy into a veterinary practice.

26. Albert Ackerman intended to leave Dr. Ackerman sources of income for Dr. Ackerman's student loans.

*The Defendant's Conversion of Property*

27. After Albert Ackerman's diagnosis with dementia, the Defendant also took advantage of Albert Ackerman's mental incapacity to manipulate him with respect to real estate Albert Ackerman owned with Dr. Ackerman.

28. Specifically, the Defendant took advantage of Albert Ackerman's mental incapacity to convince Albert Ackerman to demand that Dr. Ackerman agree to release $357,625 from the proceeds of the sale of the condominium that Dr. Ackerman and Albert Ackerman co-owned ("Demand").

29. At no time was Dr. Ackerman ever informed of Albert Ackerman's financial needs.

30. In November of 2017, an attorney hired by the Defendant informed Dr. Ackerman that Albert Ackerman would not sign closing papers to sell the condominium unless Dr. Ackerman agreed to the Demand.

31. Months prior to making the Demand, however, Albert Ackerman had already signed a Purchase and Sale Agreement with no conditions attached.

32. At the time that the Demand was made, Dr. Ackerman was employed in an intense veterinary medicine program and rented a home in Ames, Iowa.

33. Additionally, at the time that the Demand was made, Dr. Ackerman was unable to support the expenses related to ownership of a condominium.

34. On or about November 2017, the Defendant also leveraged foreclosure proceedings on the condominium and a lawsuit against Dr. Ackerman to pressure Dr. Ackerman into signing closing papers.

35. Upon closing, $357,652 from the sale was placed in the Trust that the Defendant had manipulated Albert Ackerman into executing.

36. In so doing, the Defendant converted monies to which Dr. Ackerman was entitled from the sale of the real property owned by Albert Ackerman and Dr. Ackerman.

37. Eventually, Albert Ackerman passed away leaving only his spouse, Dr. Ackerman, and the Defendant as the three remaining family members.

38. Dr. Ackerman never received all of the personal property his father intended to bestow upon him.

39. Additionally, Dr. Ackerman has never received the proceeds from Albert Ackerman's IRA.

40. The Defendant engaged in a course of conduct toward Dr. Ackerman which caused substantial financial harm to Dr. Ackerman.

41. The Defendant divested Dr. Ackerman of Albert Ackerman's IRA.

42. The Defendant divested Dr. Ackerman of all of Albert Ackerman's personal property including items which belonged to Dr. Ackerman

43. Opposing the Defendant's efforts to divest Dr. Ackerman of Dr. Ackerman's interests in the real property, IRA, and personal property would have required Dr. Ackerman to travel to California and postpone the veterinary program to which he committed.

44. At that time, Dr. Ackerman had neither the time nor resources to oppose the Defendant's efforts to convert the sources of income.

45. Since Albert Ackerman's death, the Defendant has refused to share any of Albert Ackerman's financial information with Dr. Ackerman.

46. Since Albert Ackerman's death, the Defendant has refused to give Dr. Ackerman access to Dr. Ackerman's personal property.

47. Since Albert Ackerman's death, the Defendant has refused to provide Dr. Ackerman with information about personal property.

48. Despite all of this, until recently, Dr. Ackerman decided to let matters pass.

*Defamatory Comments*

49. On December 8, 2019, the Defendant posted messages through the Internet social media platform Facebook, Inc. ("Facebook") stating, in relevant part: "Found this photo. My father was sexually abusing my brother who in turn was sexually abusing and torturing me."

50. The Defendant further stated, "Tried to keep it gentle… didn't use the 'r' word."

51. The Defendant identified Dr. Ackerman by posting a photograph of the Defendant and Dr. Ackerman as children alongside their father.

52. Albert Ackerman did not sexually abuse Dr. Ackerman.

53. Albert Ackerman never sexually abused anyone.

54. Albert Ackerman did not rape Dr. Ackerman.

55. Albert Ackerman never raped anyone.

56. Dr. Ackerman did not sexually abuse the Defendant.

57. Dr. Ackerman never sexually abused anyone.

58. Dr. Ackerman did not torture the Defendant.

59. Dr. Ackerman never tortured anyone.

60. Dr. Ackerman did not rape the Defendant.

61. Dr. Ackerman never raped anyone.

62. Upon information and belief, the Defendant made and continues to make similar false statements about Dr. Ackerman to other third parties.

63. The foregoing statements made by the Defendant about Dr. Ackerman were false and defamatory ("False and Defamatory Statements").

64. With the Defendant having made the False and Defamatory Statements, Dr. Ackerman could no longer tolerate the Defendant's conduct designed and intended to harm Dr. Ackerman.

65. In an effort to resolve the matter, Dr. Ackerman obtained counsel and sought an opportunity to communicate with the Defendant.

66. The Defendant did not respond.

67. As such, Dr. Ackerman had no choice but to proceed forward with filing this litigation.

### Public Perception

68. Since the publication of the False and Defamatory Statements, any individual hearing and/or reading the statements might believe that Dr. Ackerman engaged in criminal conduct.

### Intent

69. The Defendant acted with intent when she engaged in the foregoing conduct because the Defendant knew the statements she made about Dr. Ackerman were false and, by making the false statements, the Defendant intended to harm Dr. Ackerman.

70. The foregoing conduct engaged in by the Defendant shall hereinafter be referred to as the "Wrongful Conduct."

### Harm

71. Dr. Ackerman has suffered, and continues to suffer, harm arising from the Defendant's Wrongful Conduct.

72. The Defendant's Wrongful Conduct has caused Dr. Ackerman to suffer and continue to suffer from harmed reputation.

## COUNT ONE
## AS AND FOR A FIRST CAUSE OF ACTION
## DEFAMATION *PER SE*

73. Dr. Ackerman hereby incorporates by reference Paragraph 1 through 72 above in this First Count as though fully set forth herein.

74. On December 8, 2019, the Defendant posted messages through the Internet social media platform Facebook stating, in relevant part: "Found this photo. My father was sexually abusing my brother who in turn was sexually abusing and torturing me."

75. This statement is false.

76. Dr. Ackerman's father never sexually abused Dr. Ackerman.

77. Dr. Ackerman never sexually abused the Defendant.

78. Dr. Ackerman never tortured the Defendant.

79. The Defendant published a photograph of Dr. Ackerman as a child in conjunction with the December 8, 2019 Facebook post.

80. Additionally, the Defendant posted a comment to her post stating "Tried to keep it gentle… didn't use the 'r' word."

81. Clearly, in this context, the Defendant meant to state that Dr. Ackerman's father raped Dr. Ackerman and that Dr. Ackerman raped the Defendant.

82. These statements are false.

83. Dr. Ackerman's father never raped Dr. Ackerman.

84. Dr. Ackerman never raped the Defendant.

85. The Defendant published the False and Defamatory Statements to other third parties.

86. Given the nature of the post and the information contained therein, persons other than Dr. Ackerman and the Defendant would and actually have reasonably understood that the False and Defamatory Statements related to and were about Dr. Ackerman.

87. The Defendant presented the False and Defamatory Statements as fact.

88. The publication of the False and Defamatory Statements was unprivileged.

89. Alternatively, if there exists a qualified privilege to which the Defendant can appeal, the Defendant abused any such privilege.

90. The Defendant knew the False and Defamatory Statements to be false.

91. The Defendant published the False and Defamatory Statements knowing the falsity of the statements with the intent to cause Dr. Ackerman harm.

92. In the alternative, the Defendant published the False and Defamatory Statements with actual malice and/or with reckless disregard to whether they were false.

93. The False and Defamatory Statements constitute defamation *per se* because they impute criminal conduct.

94. The False and Defamatory Statements constitute defamation *per se* because they prejudice Dr. Ackerman in his business and profession.

95. As a result of the Defendant's conduct and the publication of the False and Defamatory Statements, Dr. Ackerman has suffered and continues to suffer damages including, but not limited to, harmed reputation.

96. WHEREFORE, Dr. Ackerman seeks an award of compensatory and punitive damages arising from the Defendant's *per se* defamation of him.

## COUNT TWO
## AS AND FOR A SECOND CAUSE OF ACTION
## FALSE LIGHT

97. Dr. Ackerman hereby incorporates by reference Paragraphs 1 through 72 above in this Second Count as though fully set forth herein.

98. On December 8, 2019, the Defendant posted messages through the Internet social media platform Facebook stating, in relevant part: "Found this photo. My father was sexually abusing my brother who in turn was sexually abusing and torturing me."

99. These statements are false.

100. Dr. Ackerman's father never sexually abused Dr. Ackerman.

101. Dr. Ackerman never sexually abused the Defendant.

102. Dr. Ackerman never tortured the Defendant.

103. The Defendant published a photograph of Dr. Ackerman as a child in conjunction with the December 8, 2019 Facebook post.

104. Additionally, the Defendant posted a comment to her post stating "Tried to keep it gentle… didn't use the 'r' word."

105. Clearly, in this context the Defendant meant to state that Dr. Ackerman's father raped Dr. Ackerman's and that Dr. Ackerman raped the Defendant.

106. These statements are false.

107. Dr. Ackerman's father never raped Dr. Ackerman

108. Dr. Ackerman never raped the Defendant.

109. The Defendant published the foregoing false statements on the Internet.

110. By publishing the False and Defamatory Statements on the Internet, the Defendant intentionally published the statements to a wide audience.

111. Given the nature of the post and the information contained therein, persons other than Dr. Ackerman and the Defendant would and actually have reasonably understood that the False and Defamatory Statements related to and were about Dr. Ackerman.

112. The publication of the foregoing false statements was unprivileged.

113. Alternatively, if there exists a qualified privilege to which the Defendant can appeal, the Defendant abused any such privilege.

114. The Defendant knew the foregoing false statements to be false and untrue when she published them.

115. Alternatively, the Defendant published the False and Defamatory Statements with actual malice and/or reckless disregard as to whether they were false.

116. By publishing the foregoing false statements, the Defendant cast Dr. Ackerman in a false light.

117. The false light in which the Defendant placed Dr. Ackerman is and would be highly offensive to a reasonable person.

118. As a result of the Defendant casting Dr. Ackerman in a false light, Dr. Ackerman has suffered and continues to suffer damages including, but not limited to, harmed reputation.

119. WHEREFORE, Dr. Ackerman seeks an award of compensatory and punitive damages arising from the Defendant casting him in a false light.

## COUNT THREE
## AS AND FOR A THIRD CAUSE OF ACTION
### INTRUSION UPON SECLUSION

120. Dr. Ackerman hereby incorporates by reference Paragraphs 1 through 72 above in this Third Count as though fully set forth herein.

121. The Defendant falsely accused Dr. Ackerman's father of raping and sexually abusing Dr. Ackerman.

122. While untrue, the False and Defamatory Statements expose personal family dynamics – particularly as they concern Dr. Ackerman – that Dr. Ackerman and any reasonable person would consider private and not for the public at large.

123. As such, the publication of the False and Defamatory Statements intrudes upon a very personal space within the family—the father-son relationship.

124. Contrary to the False and Defamatory Statements, the relationship between Albert Ackerman and Dr. Ackerman was completely appropriate and purely platonic in nature.

125. Albert Ackerman cared for and loved his son.

126. By publishing the False and Defamatory Statements and inducing Dr. Ackerman to respond to them, the Defendant intruded upon Dr. Ackerman's private life, solitude, and seclusion.

127. The Defendant's intrusion upon Dr. Ackerman's private life, solitude, and seclusion is highly offensive to a reasonable person.

128. WHEREFORE, Dr. Ackerman seeks an award of compensatory damages and punitive damages arising from the Defendant's intrusion upon Dr. Ackerman's seclusion.

# COUNT FOUR
# AS AND FOR A FOURTH CAUSE OF ACTION
# CONVERSION

129. Dr. Ackerman hereby incorporates by reference Paragraphs 1 through 72 above in this Fourth Count as though fully set forth herein.

130. The Defendant unlawfully and without justification intermeddled with Dr. Ackerman's interest in the condominium during foreclosure proceedings.

131. Additionally, the Defendant coerced Albert Ackerman to execute a Trust disinheriting Dr. Ackerman.

132. Additionally, the Defendant forced Dr. Ackerman to divest his interest in the condominium.

133. The Defendant unlawfully and without justification intermeddled with Dr. Ackerman's interest in Dr. Ackerman's share of Albert Ackerman's IRA.

134. The Defendant unlawfully and without justification intermeddled with Dr. Ackerman's possession of Albert Ackerman's valuable personal property.

135. The Defendant's intentional actions deprived Dr. Ackerman from using and possessing the condominium and/or any interest from the sale of the condominium.

136. The Defendant's intentional actions deprived Dr. Ackerman of using and possessing Dr. Ackerman's share of Albert Ackerman's IRA.

137. The Defendant's intentional actions deprived Dr. Ackerman of using and possessing Albert Ackerman's personal property including personal property belonging to Dr. Ackerman.

138. By such conduct, the Defendant caused Dr. Ackerman harm in lost value and lost enjoyment of the foregoing real and personal property.

139. WHEREFORE, Dr. Ackerman seeks an award of compensatory damages equal to the value of the converted property, plus interest, arising from the Defendant's unlawful conversion causing Dr. Ackerman to suffer deprivation of the use and possession of various property.

## COUNT FIVE
## AS AND FOR A FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

140. Dr. Ackerman hereby incorporates by reference Paragraphs 1 through 72 above in this Fifth Count as though fully set forth herein.

141. By publishing these False and Defamatory Statements, the Defendant intentionally engaged in extreme and outrageous conduct toward Dr. Ackerman

142. By publishing the False and Defamatory Statements, the Defendant accused Dr. Ackerman's father of raping, sexually abusing, and torturing Dr. Ackerman.

143. By publishing the False and Defamatory Statements, the Defendant accused Dr. Ackerman of raping and sexually abusing the Defendant.

144. The Defendant's conduct was made with the intent to cause emotional distress to Dr. Ackerman.

145. The Defendant's conduct in publishing these False and Defamatory Statements caused Dr. Ackerman. to suffer severe emotional distress.

146. The Defendant's conduct in publishing these False and Defamatory Statements actually and proximately caused Dr. Ackerman to suffer severe and emotional distress.

147. WHEREFORE, Dr. Ackerman seeks an award of compensatory damages and punitive damages arising from the Defendant's conduct causing Dr. Ackerman to suffer severe emotional distress.

## GENERAL

148.    Where conditions precedent are alleged, Dr. Ackerman avers that all conditions precedent have been performed or have occurred.

## PRAYER FOR RELIEF

WHEREFORE, DR. Ackerman accordingly and respectfully demands judgment against DEFENDANT JANE ELLEN ACKERMAN as follows:

1.    That PLAINTIFF be awarded compensatory damages in an amount to be determined at trial;

2.    That PLAINTIFF be awarded punitive damages in an amount to be determined at trial;

3.    That DEFENDANT be enjoined from invading and violating Dr. Ackerman's privacy;

4.     That DEFENDANT be enjoined from harassing Dr. Ackerman; and,

5.    That PLAINTIFF be awarded any such other and further relief to which he may be entitled as a matter of law and as deemed appropriate by this Court.

Dated: Chicago, Illinois  
      April 21, 2020

PLAINTIFF,  
DR. ANDREW ACKERMAN,

/s/ Charles Lee Mudd Jr.  
By: One of His Attorneys  
Charles Lee Mudd. Jr.  
MUDD LAW OFFICES  
311 Main Street  
P.O. Box 483  
Park City, Utah 84060  
435.640.1786 Telephone  
435.603.1035 Facsimile  
Utah Bar No.: 11829  
clm@muddlaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| DR. ANDREW ACKERMAN., ) | |
| ) | |
| Plaintiff, ) | COMPLAINT |
| ) | |
| v. ) | CASE NO. |
| ) | |
| JANE ELLEN ACKERMAN, ) | DAMAGES OVER $75,000 |
| ) | |
| Defendant. ) | |

## JURY DEMAND

The Plaintiff demands a trial by jury.

/s/ Charles Lee Mudd Jr.
Charles Lee Mudd Jr.